UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA VAN SCOY, LYNDA AZEVEDO, DIANA MURDOCK, CHRISTINA CARNES; MINA JO GUERRERO, MIRACLE JOHNSON, ROSANNE LAZUKA, PATRICIA LOGAN, TERESA LYON, THERESA ORTH, and MARA GRACE SMITH,<br><br>    Plaintiffs,<br><br>v.<br><br>NEW ALBERTSON'S INC., ALBERTSON'S, INC., SAVE-MART SUPERMARKETS, INC., LUCKY'S INC.; and DOES 1 through 25, inclusive,<br><br>    Defendants. | No. 2:08-cv-02237-MCE-KJM<br><br><br><br><br><br><br><br><br><br>**MEMORANDUM AND ORDER** |

----oo0oo----

Defendant Save Mart Supermarkets Inc., as successor in interest to Albertson's, Inc. and Albertsons, LLC ("Defendant"), has separately moved for summary judgment as to two of the Plaintiffs in this action, Christina Carnes and Rosanne Lazuka ("Plaintiffs" unless otherwise indicated).

///

///

Defendant argues that Plaintiffs' claims asserted in the instant lawsuit, which include allegations of harassment, retaliation and discrimination in violation of the California Fair and Employment and Housing Act, California Government Code § 12940, et seq. ("FEHA"), fail on various grounds. As set forth below, the Court will deny both Motions.[1]

**BACKGROUND**

Plaintiffs Christina Carnes and Rosanne Lazuka are two of eleven different named Plaintiffs[2] who brought suit in this matter in March of 2008 after previously filing a total of 19 complaints with the California Department of Fair Employment and Housing ("DFEH") in March and April of 2007. Plaintiffs, who were white employees of Defendant's Store 7254 in Vallejo, California, allege they were subjected to so-called "reverse" discrimination at the hands of their African-American store manager, Lois Douglas, who is claimed to have discriminated, harassed and retaliated against them because they were not African-American.

Because the summary judgment requests now before the Court are nearly identical, the Court will consider both motions jointly, while noting any differences between the claims posited by Carnes and Lazuka that merit separate treatment.

---

[1] Because oral argument was not deemed to be of material assistance, this matter was submitted on the briefs. E.D. Cal. Local Rule 230(g).

[2] Several of those Plaintiffs have since been dismissed.

2

Both Plaintiffs worked at Store 7254 before Lois Douglas transferred to that facility as Store Manager in June of 2005. Both claim that the atmosphere changed markedly thereafter since Ms. Douglas acted in a discriminatory fashion by favoring African-American employees in such areas as work assignments and scheduling, promoting African-Americans with less seniority, and holding Plaintiffs to a stricter standard of conduct than African-American employees. Compl., ¶ 18. Plaintiffs further claim that Douglas began a campaign of harassment and intimidation which created a hostile work environment with the intention of forcing Plaintiffs to resign or to transfer to other stores. Id. at ¶ 20.

According to Plaintiffs, the discipline meted out by Douglas to white, as opposed to black, employees was vastly different. Both Carnes and Lazuka describe, for example, significant discrepancies in the way Douglas enforced dress issues between the two groups. Similar discrepancies were identified with respect to other issues like whether consumption of food and beverages was permitted on the sales floor. Moreover, according to Plaintiffs, Douglas adopted a pattern of announcing over the store-wide loudspeaker which employees were to be called into her office, ostensibly for discipline-related reasons. According to the Declaration of Andrea Van Scoy, 99 percent of the time this involved white employees. Ms. Van Scoy notes that in her 31 years in the grocery business she has never seen discipline being announced in such a public, rather than confidential, manner. See Van Scoy Decl., ¶¶ 8, 10.

///

3

Plaintiffs go on to allege that Douglas gave African-American employees more favorable hours and shift assignments. According to Carnes, before Douglas took over management of the Vallejo store she had never experienced problems in having her work shifts accommodate additional time she worked a second job at Lyon's Restaurant. When Ms. Douglas was in charge, however, she began to assign shifts that conflicted with that second job. Carnes further alleges that at the same time her own weekly hours at Defendants' facility were reduced as much as twelve hours a week. Carnes Decl., ¶¶ 6, 13.

Perhaps most significantly, both Plaintiffs insist that Douglas' disparate treatment between black and white employees resulted in a hostile, polarized work environment. This alleged state of affairs is buttressed by declarations of other employees submitted by Plaintiffs in connection with their oppositions to Defendants' two motions. According to Mina Guerrero, a white manager, for example, Douglas routinely failed to back her up on any discipline accorded to black employees, even when those employees worked directly under Ms. Guerrero. Guerrero Decl., ¶ 16, 20-21. Plaintiff Lazuka herself opines that Ms. Douglas' repeated and unwarranted discipline of white employees resulted in their disqualification for promotional opportunities to the advantage of black employees with less seniority who were thereby able to qualify for positions that would otherwise have been available. Lazuka goes on to allege that the vast majority of hires and promotions effectuated by Ms. Douglas were of African-Americans.

///

4

1 She states that Douglas attempted to condescendingly rebuff her
2 own requests for different job applications, going so far on one
3 occasion to complain that "**you people** do this to me all the
4 time". Lazuka Decl., ¶ 37.
5 In March of 2006, various Store 7254 employees complained to
6 the Union about Douglas' near daily harassment and intimidation
7 of non-black employees, misuse of discipline and writeups to
8 threaten employees and the resulting tension filled, hostile work
9 atmosphere. See id. at ¶ 27. Thereafter, according to Plaintiff
10 Lazuka, Douglas told her that the Union did not scare her and
11 that Lazuka should "keep her big mouth shut". Id. at ¶¶ 28, 31.
12 According to Defendant, it conducted an internal
13 investigation in August of 2006 after being advised by the Union
14 of complaints levied against Ms. Douglas. Although Defendant
15 claims that it found nothing amiss as a result of that
16 investigation, it nonetheless implemented a plan of action that
17 included removing Ms. Douglas from issuing discipline to store
18 employees, tasking managers with assisting in the interview and
19 hiring process for job applicants, and sending Ms. Douglas for
20 outside training aimed at improving her communication skills.
21 See Carnes Statement of Undisputed Fact ("SUF") Nos. 56-58.
22 Plaintiffs nonetheless claim that these measures failed to
23 curtail Ms. Douglas' alleged abuses, and, as stated above, the
24 eleven originally-named Plaintiffs in this case, including
25 Plaintiffs Lazuka and Carnes, filed a total of 19 complaints
26 with DFEH in March and April of 2007 which alleged, inter alia,
27 discrimination, retaliation, and hostile work environment claims
28 against Ms. Douglas and Defendant.

5

While Defendant again concluded that there was no basis to support these claims, it nonetheless transferred Ms. Douglas from Store 7254 to another facility in San Pablo after the DFEH complaints were made.

In the meantime, because Plaintiff Lazuka claims she noted few, if any changes in how Ms. Douglas treated white employees, she applied for and ultimately obtained a transfer to Defendant's Hercules store.[3]  See Lazuka Decl., ¶¶ 49, 50.  Plaintiff Carnes, for her part, ultimately went out on stress leave before transferring to a store in Vacaville in order to get away from Ms. Douglas.  Carnes Decl., ¶¶ 51-53.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

///

---

[3] While Defendant claims that Lazuka's new position, as a meat cutter apprentice, was a promotion, Lazuka maintains that no promotion in fact would result for a period of some three years. See Lazuka Decl., ¶ 3.

6

> "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Rule 56(c).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986); First Nat'l Bank v. Cities Ser. Co., 391 U.S. 253, 288-289 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).

///
///
///
///

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

**ANALYSIS**

**A. Whether or Not the Alleged Harassment was Sufficiently Severe and Pervasive to Constitute a Viable FEHA Claim Presents Issues of Fact**

According to Defendant, Plaintiffs' harassment claim fails because Plaintiffs cannot show, as they must, that the alleged harassment was pervasive enough to alter the conditions of employment and create an abusive work environment. See Doe v. Capital Cities, 50 Cal. App. 4th 1038, 1045 (1996). Any determination in that regard, however, depends on an assessment of the "totality of the circumstances." Fisher v. San Pedro Peninsula Hospital, 214 Cal. App. 3d 590, 609-610 (1989).

///
///

Those circumstances include the frequency and severity of the acts at issue, whether the conduct is threatening and/or humiliating, and whether, all things considered, such conduct unreasonably interferes with an employee's work performance. Etter v. Veriflo Corp., 67 Cal. App. 4th 457, 464 (1998).

These factors necessarily implicate factual findings not amenable to disposition on summary judgment. Defendant nonetheless argues that judgment as a matter of law is appropriate by characterizing Ms. Douglas' behavior as amounting to routine discipline and criticism that cannot possibly satisfy the above-stated "severe and pervasive" standard. The Court cannot agree with that assessment, particularly given the fact that in assessing the propriety of summary judgment, it must credit all inferences supported by the non-moving party's (here Plaintiffs') evidence. Blackhorn v. City of Orange, 485 F.3d 463, 470 (9th Cir. 2007) (quoting Anderson v. Liberty Lobby, 477 U.S. at 255). Here, Plaintiffs' evidence points to an environment allegedly pervaded by blatant racial favoritism, with white employees subject to unwarranted and publicly humiliating criticism and an entirely different standard of conduct applicable to black employees. Moreover, the complaints voiced against Ms. Douglas were hardly isolated; as stated above a total of eleven different employees lodged FEHA complaints as a result of her conduct. Giving all inferences from this evidence the proper credence, as this Court has to do on summary judgment, makes any grant of summary judgment impossible. Triable issues of fact with respect to the alleged harassment preclude such relief.

1  **B.  Whether or Not the Alleged Harassment was Racially Motivated also Implicates Issues of Fact**

Defendant correctly points out that to survive summary judgment, Plaintiffs must raise a triable issue of fact that their alleged harassment was based on race.  <u>Surrell v. Cal. Water Serv. Co.</u>, 518 F. 3d 1097, 1108 (9th Cir. 2008).  The evidence cited by Plaintiffs, however, more than meets that threshold, particularly after giving it the due deference that summary judgment requires.  Plaintiffs have cited evidence, both in the form of their own declarations and declarations submitted from several other employees, that Ms. Douglas disproportionately favored black employees in matters of discipline, promotion and hire.  As Plaintiff Lazuka's declaration attests, when she asked for application materials Douglas complained about "you people" repeatedly making such requests.  Summary judgment on this basis cannot be had.

**C.  Resolving all Inferences in Plaintiffs' Behalf, the Alleged Harassment Cannot be Deemed to Solely Fall within the Rubric of Personnel Management Activity, and Defendant's Effort to Obtain Summary Judgment on that Basis must Fail**

Defendant next attempts to justify summary judgment on grounds that any alleged malfeasance on Ms. Douglas' part is rooted solely in so-called Personnel Management Activity, thereby making summary judgment proper.

///
///
///

10

In <u>Reno v. Baird</u>, 18 Cal. 4th 640 (1998), the California Supreme Court indeed recognized that "commonly necessary personnel management actions... do not come within the meaning of harassment", which instead "consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives..." <u>Id.</u> at 645-647.

Here again, the nature of Ms. Douglas' conduct, particularly when seen in the prism of affording all reasonable inferences to Plaintiffs' evidence, can under no stretch of the imagination be considered "commonplace" personnel management. The pervasive discriminatory treatment on Douglas' part that Plaintiffs identify has no place within any acceptable notion of such management. As the California Supreme Court noted in <u>Reno v. Baird</u>, <u>supra</u>, "[h]arassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job. 18 Cal. 4th at 646.

**D.   Defendant's Claim that Neither Plaintiff has Suffered any Actionable "Adverse Employment Action" for Purposes of Alleging Discrimination also Fails**

Defendant additionally premises its request for summary judgment as to both Plaintiffs Lazuka and Carnes on an argument that because neither suffered any "adverse employment action", their claims for both discrimination and retaliation necessarily fail. Defendants are correct that Plaintiffs must identify such adverse action as a prima facie element of their employment discrimination claim.

Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 355 (2000).  An adverse employment action under FEHA is an action that materially affects the terms, conditions, or privileges of employment. Yanowitz v. L'Oreal, 36 Cal. 4th 1028, 1051-52 (2005). Conditions that are merely "inconvenient or irritating" do not suffice.  McRae v. Dep't of Corrections and Rehabilitation, 142 Cal. App. 4th 377, 393 (2006).  The same requirement of an adverse action applies to claims of retaliation as well as charges of discrimination.  Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1453 (2002).

Here, Defendant contends that because neither Plaintiff has suffered any loss as a result of Ms. Douglas' purported action, the requisite adverse employment action is lacking.  With respect to Plaintiff Carnes, Defendant argues that because she transferred to Vacaville without any loss of salary or benefits, and in fact remains employed by Defendant, she cannot have experienced any adverse action relating to he employment.

Despite the general requirement that an adverse action must materially affect the conditions of employment in order to suffice for purposes of stating a claim under FEHA, case law is nonetheless clear that such actions include "the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance of opportunity for advancement in his or her career."  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th at 1053-54.  Here, Carnes claims that Douglas reduced her scheduled work hours by approximately 12 hours per week, and of the reduced hours assigned shifts that conflicted with her second job at Lyon's Restaurant.

12

Carnes Decl., 4-6, 8, 13-14. Those actions alone can constitute an adverse employment action under the liberal construction of such actions established by <u>Yanowitz</u>. Moreover, with respect to Plaintiff Lazuka, as a result of the transfer away from Vallejo claimed to have been necessary due to Douglas' actions, she claims that she lost seniority and promotional opportunities during the three years period of her meat cutting apprenticeship. That is also enough to defeat summary judgment on the issue.[4]

### E. Plaintiff Carnes' Claims are not Preempted by the National Labor Relations Act.

As a final argument, Defendant argues in its Motion directed to Plaintiff Carnes' claims that because they involved activity either prohibited or protected by the National Labor Relations Act ("NLRA"), the NLRB rather than this Court has primary jurisdiction, and neither state nor federal courts can grant relief. See Carnes Mot., pp. 17, citing <u>San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon</u>, 359 U.S. 236, 243-44 (1959).

///
///
///

---

[4] The Court recognizes that Lazuka did not specifically identify loss of seniority and promotional opportunities in her 2009 response to interrogatories asking her to identify all adverse employment actions she purportedly suffered. Defendant argues that the additional evidence in this regard necessarily contradicts her prior actions, and therefore should not be considered. In the Court's view, however, the particular distinction identified here is more properly reserved for cross examination rather than defeating summary judgment.

13

Although the NLRA may well preempt claims solely relating to working conditions stemming from a collective bargaining agreement, here the gravamen of Plaintiffs' lawsuit sounds in discrimination, not in any breach of collective bargaining under Section 7 of the NLRA.  In other words, the primary issue here is not whether Plaintiffs engaged in protected activities under the NLRA but instead whether they were harassed, discriminated and retaliated against by Douglas in violation of FEHA.  Therefore Defendant's claim for summary judgment predicated on NORA preemption must fail.

**CONCLUSION**

For all the foregoing reasons, Defendant's Motions for Summary Judgment against Plaintiff Christina Carnes (ECF No. 32) and against Rosanne Lazuka (ECF No. 39) are DENIED.[5]

IT IS SO ORDERED.

Dated: November 30, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[5] The Court recognizes that both parties have filed various objections to the evidence submitted in connection with the subject motions.  To the extent that objections have been raised with respect to evidence cited or discussed in this Memorandum and Order, those objections are overruled.  Otherwise, the Court declines to rule on any remaining objections since the evidence in question was not germane to its decision herein.  Finally, the Court also recognizes Defendant's Request for Judicial Notice, pursuant to Federal Rule of Evidence 201(b), with respect to Plaintiff Carnes' Complaint of Discrimination with the DFEH.  That request is unopposed and is granted.